## Blue v. Commonwealth.

### (Decided September 26, 1916.)

## Appeal from Jefferson Circuit Court (Criminal Branch).

Criminal Law—Evidence—Affidavit—Admissibility of.—The affidavit of the superintendent of an asylum for the insane stating from the records of the asylum that the accused had been an inmate, was not competent evidence in the absence of a showing that the presence of the superintndent or the record could not be secured.

W. CLARK OTTE, EDWARD L. LAUSHELL and BRENT C. OVERSTREET for appellant.

M. M. LOGAN, Attorney General, and D. O. MYATT, Assistant Attorney. General, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

Under an indictment charging him with the murder of Adam Oster, the appellant was convicted and his punishment fixed at death. According to the weight of the evidence the murder committed by appellant was without provocation and exceptionally cruel. It appears that the appellant was the tenant of Oster, and that on the occasion of the homicide Oster, who was an old man and a carpenter, went to the house occupied by the appellant for the purpose of collecting his rent, carrying with him a small kit of carpenter tools, including a hatchet. When Oster arrived at the house the appellant was on the inside, and, after a short conversation between them in respect to the rent, the appellant pushed or knocked Oster out of the door, and then took the hatchet Oster had been carrying and struck him several hard and deadly blows on the back and top of the head with the edge of the hatchet, killing him almost instantly. After he had finished his murderous work the appellant fled from the scene but was captured a short time after-

wards by police officers and lodged in jail, where he remained until his trial.

The appellant in his own behalf testified that when Oster came to collect the rent he commenced cursing and abusing him and made an effort to strike him with his hatchet. That for the purpose of protecting himself from the attack made by Oster he took the hatchet away from him and struck with it the blows that killed him. But his version of the affair was not supported by any other material evidence, although a witness by the name of Calvin Russell corroborated the appellant in respect to some of his statements as to what occurred.

There was some attempt on the part of counsel for the appellant to show that he was insane, but the evidence on this subject was very slight and really not sufficient to support an instruction, although the court in the abundance of caution did give the usual instructions allowable when insanity is set up as a defense to homicide.

Other instructions submitted to the jury the issues of murder, manslaughter, sudden heat and passion and self-defense in appropriate manner and form.

In the motion and grounds for a new trial a new trial was asked on the ground of newly discovered evidence, but this ground for a new trial was not supported by any substantial evidence in the form of affidavit or otherwise and is not urged by counsel on this appeal as a reason why a new trial should be granted.

It appears that during the examination of appellant, who was introduced as a witness in his own behalf, it was shown by his evidence that he had been confined for a few months about twenty-five years ago in the Eastern Hospital for the Insane located at Lexington, Ky., and when this evidence was given, his counsel offered to read to the jury an affidavit made by the superintendent of this hospital for the insane, setting out that the records of the hospital showed that the appellant had been committed in May, 1899, as an insane person suffering with acute mania, caused by religious excitement, and that he was discharged as recovered in June, 1890. The trial judge refused to permit the affidavit to be read to the jury, and this is the only error assigned by counsel in their brief. We do not, however, find that the court committed error of any kind in refusing to permit this affidavit to be read. We do not know nor have we been

cited to any rule of evidence that would permit affidavits like this to be read on the trial of the case in the absence of some showing that the presence of the superintendent or the records of the asylum could not be procured for use at the trial and there is no showing of this kind.

But, aside from this, it is very apparent that this affidavit, if admitted, could not have served to excuse or extenuate the crime or mitigate the punishment the jury was authorized to inflict, because there was no other evidence even tending to show that the appellant at the time of the homicide or afterward, or for twenty years before, had been laboring under any mental disease, or that he was for any cause not responsible for his conduct.

He had every opportunity in the trial court to make his defense, and all of his rights were well protected not only by the counsel appointed to defend him but by the judge who presided at the trial. The simple truth is the appellant had no defense and the jury was fully authorized by the evidence to find him guilty of murder in the first degree and fix his punishment at death.

The judgment is affirmed.